UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| WILBUR-ELLIS COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>TAIT LACEY and J.R. SIMPLOT COMPANY,<br><br>Defendants. | 4:23-CV-04097-LLP<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER |

On June 20, 2023, Plaintiff, Wilbur-Ellis Company, LLC, ("Wilbur-Ellis"), filed a motion for a preliminary injunction or, in the alternative, a temporary restraining order. (Doc. 5.) Wilbur-Ellis seeks to enforce restrictive covenants in an Employment Agreement entered into with its former employee, Tait Lacey ("Lacey"). Lacey's current employer, Defendant J.R. Simplot Company ("Simplot"), filed opposing documents in which Lacey joined. Wilbur-Ellis filed a reply. Argument took place on July 6, 2023.

## BACKGROUND

The parties submitted a joint statement of undisputed facts, providing:

1. Lacey and Wilbur-Ellis are parties to an employment agreement dated April 1, 2015 (Dkt. 1-1) ("Employment Agreement"). The Employment Agreement contains a section five entitled "Covenant Not to Compete; Non-Solicitation" ("Restrictive Covenant Clause") that defines the restricted territory as McCook County, South Dakota and within a 100-mile radius of such county ("Restricted Territory").

2. The Employment Agreement contains a section two entitled "Term" that states:

    The term of this Agreement shall commence on the Effective Date and, unless terminated prior to such time, shall terminate at the close of business on March 31, 2020 (the "Term"). Thereafter, the employment of Employee by Employer shall continue at will, and either party may terminate Employee's employment upon written notice of such termination given by either party according to Employer's standard practice. This Agreement shall automatically terminate upon the death or

> physical or mental disability of Employee which prevents such Employee from performing his duties hereunder.

3. Lacey's employment with Wilbur-Ellis ended on or about January 13, 2023.
4. Lacey and Wilbur-Ellis are parties to a severance agreement executed on or about January 25, 2023 (the "Severance Agreement").
5. Lacey began employment with Simplot on or about March 20, 2023, and since such time has been working on Simplot business within the Restricted Territory.
6. Since joining Simplot, Lacey has solicited and/or intends to solicit Wilbur-Ellis's customers and Wilbur-Ellis's employees who are located within the Restricted Territory.

(Doc. 15, pp. 1-2.)

## LEGAL STANDARD

The Court must consider four factors in deciding whether to grant a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between this harm and the injury that granting the injunction will inflict on the other parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief bears the burden of proving that, under these factors, the Court should issue injunctive relief. *See Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). "Courts in the Eighth Circuit apply the same standards to a request for preliminary injunction and temporary restraining order." *Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 n.6 (D. Minn. 2012) (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989)). "An evidentiary hearing is required prior to issuing a[n] [ ] injunction only when a material factual controversy exists." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002). In this case, the parties agree that there are no material factual controversies.

## DISCUSSION

The parties agree that their dispute involves a narrow issue of law to be decided by the Court: Whether the Restrictive Covenant Clause in the Employment Agreement is superseded,

modified, or terminated by the terms of the Severance Agreement.[1] This legal issue impacts whether Wilbur-Ellis is likely to succeed on the merits of its claim against Defendants, which is the most important *Dataphase* factor. *See Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted).

The parties agree that the choice of law provision in the Severance Agreement requires application of Colorado law and that there are no material differences between how Colorado and South Dakota courts interpret contracts. Under Colorado law, "[t]he primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). "The intent of the parties is to be determined from the contract language itself." *Union Rural Elec. Ass'n, Inc. v. Pub. Utilities Comm'n of State*, 661 P.2d 247, 251 (Colo. 1983). Courts must interpret the contract in its entirety, "seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009).

"Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law." *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996). "When a document is unambiguous, it cannot be varied by extrinsic evidence." *Id.* at 911. "The fact that the parties disagree as to [a term's] meaning does not in itself create an ambiguity." *Kuta v. Joint Dist. No. 50(J) of Cntys. of Delta, Gunnison, Mesa & Montrose*, 799 P.2d 379, 382 (Colo. 1990). The court may not consider the parties' own extrinsic expressions of intent. *See Fire Ins. Exch. v. Rael by Rael*, 895 P.2d 1139, 1143 (Colo.App. 1995).

The Supreme Court of Colorado has recognized that "courts should not rewrite the provisions of an unambiguous document, but must enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms." *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997).

---

[1] Defendants also argue that the Restrictive Covenant Clause is unenforceable because Lacey's Employment Agreement ended based on its stated term on March 31, 2020. The Court rejected this same argument in another case involving a former Wilbur-Ellis employee, Kevin Erickson. *See Wilbur-Ellis Co., LLC v. Kevin Erikson & J.R. Simplot Co.*, 4:23-CV-04058, Docket 44. The Court will not reconsider its decision in *Erikson*. Defendants have explained that they reassert this argument for preservation of the issue on appeal.

Here, the parties' dispute centers around the interpretation of paragraph 25 of the Severance Agreement. Paragraph 25 provides, in relevant part:

> 25. <u>Entire Agreement</u>. This Agreement shall supersede all prior employment, severance or separation agreements and understandings between the parties and sets forth the entire understanding of the parties with respect to the subject matter hereof. Notwithstanding the foregoing, Employee acknowledges and agrees that their obligations with respect to Confidential Information under the Handbook and any Confidentiality Agreements shall remain valid and enforceable following the execution of this Agreement. . . . .

(Severance Agreement at ¶ 25.)

According to Wilbur-Ellis's interpretation of paragraph 25, the limiting language "with respect to the subject matter hereof," refers only to "the subject matters addressed in the underlying terms of the Severance Agreement – a contract that pertains solely to the terms of Lacey's separation from employment." (Doc. 34, p. 8.) In other words, the limiting language ("with respect to the subject matter hereof") makes clear " that the Severance Agreement only is intended to supersede those subjects and topics specifically addressed by the contract, not every agreement that the parties had entered into prior to the execution of the Severance Agreement." (*Id.*) Thus, according to Wilbur-Ellis, the non-compete agreement was not superseded by the Severance Agreement. Wilbur-Ellis believes this reading of paragraph 25 "is on all fours with" this Court's decision in *Hot Stuff Foods, LLC v. Mean Gene's Enterp.'s Inc.*, 468 F. Supp. 2d 1078 (D.S.D. 2006).

Defendants divide the first sentence in paragraph 25 into two clauses:

> The first clause is very broad and expressly states it supersedes all prior employment agreements. The second clause contains a limitation indicating the Severance Agreement sets forth "the entire understanding of the parties with respect to the subject matter hereof." But, the limiting language of "with respect to the subject matter hereof," does not modify the broad first clause superseding all prior employment agreements.

(Doc. 26, p. 10.)

Next, Defendants point out that the language in the second sentence of paragraph 25 specifically states that Lacey's obligations "with respect to Confidential Information under the Handbook and any Confidentiality Agreements shall remain valid and enforceable following the execution of this Agreement." Defendants argue that the absence of similar language stating that the Restrictive Covenant Clause shall remain valid and enforceable after the Severance Agreement

4

indicates that the parties did not intend the Restrictive Covenant Clause to survive. Defendants believe that this reading of paragraph 25 comports with the Colorado district court's decision in *Northwest Building Components, Inc. v. Adams*, 2022 WL 1689293 (D. Colo. 2022).[2]

As an initial matter, the Court concludes that the disputed language is not ambiguous and thus the Court will not consider extrinsic evidence. The Court also concludes that Defendants' interpretation is most consistent with the language of paragraph 25. Interpreting the disputed language as Wilbur-Ellis proposes would be inconsistent with the unambiguous language of paragraph 25.

The first sentence of paragraph 25 of the Severance Agreement contains two clauses. The "and" between the two clauses connects two verbs with the same subject. The Severance Agreement is the subject which performs both actions (supersedes and sets forth). The first clause expressly states that the Severance Agreement supersedes "all prior employment . . . agreements," and thus indicates an intent to supersede specifically Lacey's Employment Agreement with Wilbur-Ellis. The second clause in the first sentence of paragraph 25 states that the Severance Agreement sets forth "the entire understanding of the parties." "[T]he subject matter thereof" refers to "the entire understanding of the parties." The Severance Agreement is the "Entire Agreement" between the parties. The Restrictive Covenant Clause is beyond the "subject matter" of the Severance Agreement.

Analysis of the second sentence in paragraph 25 further supports this Court's interpretation of the first sentence by placing the parties' intentions in context. The second sentence states that, "notwithstanding" the first sentence, the confidentiality obligations of Lacey's prior Employment Agreement remain in effect. Only if the Severance Agreement supersedes Lacey's prior Employment Agreement was this second sentence necessary to maintain Lacey's confidentiality

---

[2] This Court's opinion in *Hot Stuff* and the Colorado district court's opinion in *Adams* are instructive but they are not dispositive. The disputed language in *Hot Stuff* and *Adams* differs from the language in paragraph 25 of the Severance Agreement at issue in this case. When construing a contract, the Court seeks to determine the intent of the parties from the specific language used in that particular contract. The intent of the parties cannot be gleaned from dissimilar language used in a different contract between other parties. Further, in *Hot Stuff* this Court found that the "subject matter" of the Separation Agreement was the severance pay the employee had negotiated. *Hot Stuff*, 468 F. Supp. 2d at 1101. In contrast, the Severance Agreement in the present case is broader in scope.

obligations. If Wilbur-Ellis had intended to maintain Lacey's Restrictive Covenant Clause, paragraph 25 of the Severance Agreement would have stated that the Restrictive Covenant Clause "shall remain valid and enforceable following the execution of the Agreement," just as it stated with regard to the confidentiality obligations. Because the Severance Agreement lists the obligations that remain valid following execution of the Severance Agreement, and the Restrictive Covenant Clause is not listed, the parties did not intend the Restrictive Covenant Clause to survive the Severance Agreement. Had the parties intended the Restrictive Covenant Clause to survive the Severance Agreement, they were free to include the clause in the language of the second sentence of paragraph 25.

According to its plain and ordinary meaning, the Severance Agreement completely supersedes the Employment Agreement, and the Restrictive Covenant Clause in the Employment Agreement is beyond the "subject matter" of the Severance Agreement.

## CONCLUSION

In sum, the Court concludes that the disputed language of paragraph 25 is not ambiguous. The language demonstrates the parties' intention to completely supersede the Employment Agreement with the Severance Agreement, and to save Lacey's confidentiality obligations but to terminate his Restrictive Covenant Clause. Thus, Wilbur-Ellis has failed to show the likelihood of success on the merits. Accordingly,

**IT IS ORDERED** that the Motion for Preliminary Injunction or, in the Alternative, Temporary Restraining Order by Wilbur-Ellis Company LLC is denied. (Doc. 5.)

Dated this 10th day of July, 2023.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_____